1815.
DECEMBER.

TAYLOR & WARREN vs. FERGUSON & ROBERTSON.

Taylor & Warren
vs
Ferguson & Ro-
bertson

A bill in chance-
ry charged that the
complainants, by
letter, instructed
the defendants, as
their agents, to
cause an insurance
to be effected for
them on a vessel
then on a voyage,
&c. which the de-
fendant neglected
to do, and the ves-
sel was lost. The
prayer of the bill
was, that the de-
fendants discover
on oath, the mat-
ters resting in their
knowledge, &c.
and that they
might be decreed
to pay to the com-
plainants the sum
of money so by
them directed to
be insured on the
vessel, with inte-
rest, &c—Held, that
the relief prayed
by the bill is a
matter not proper-
ly cognizable in a
court of chancery,
and that that court
had no jurisdiction
further than to
compel the disco-
very which forms
one of the objects
of the bill, and that
for the rest,
the complainants
ought to be left to
their remedy at
law.

APPEAL from a decree of the Court of Chancery. The bill of the complainants, (now appellants,) stated, that they on the 30th of March 1802, being then engaged in commerce and shipping in *Norfolk*, in the state of *Virginia*, and possessed in their right of a ship called *The Fox*, of the value of $4000, and supposed by them to be on a voyage from *Kingston*, in the Island of *Jamaica*, to *Port Republican*, and from thence to *Norfolk*, and wishing to make insurance on the said ship to the amount of her said value, *Taylor*, one of the complainants, wrote a letter of the above date to the defendants, (the appellees,) who then carried on trade in the city of *Baltimore*, and were the complainants' regular agents and correspondents in that city, for making insurance, and every other business of a commercial nature which they had occasion to transact there, containing this request, viz. "I wish to have insurance effected from *Jamaica* to *Port Republican*, and from thence to *Norfolk*;" which letter was duly received by the defendants, and acknowledged by them. That having, soon after the date of the said letter, received intelligence, as the fact was, that the ship, instead of going to *Jamaica*, had proceeded to *Jeremie*, and was about to return from thence to *Norfolk*, by the way of *Cape Francois*, and wishing to accommodate the insurance to be made on her to this new voyage, the said *Taylor* did, on the 6th of April 1802, address to the defendants, and put into the post office at *Norfolk*, a second letter of that date, as follows, viz. "I wrote you on the 30th *ultimo*, directing insurance on the ship *Fox*, from *Jamaica* to *Port Republican*. I find, instead of proceeding to that port, they went to *Jeremie*, where I have heard of their arrival. From thence they will proceed to *Cape Francois*, at which port she has a cargo to discharge, which was taken in at *Jeremie*. You will therefore please to have these things mentioned in the policy. From *Cape Francois* she will come to *Norfolk*." The bill then charged, that the defendants received the said last mentioned letter in due course of post, but as the receipt of it by them is a matter resting in their private knowledge, which they always avoided acknowledging, and now deny, the complainants have no method of establishing the fact of the said receipt, except by a discovery, by the defendants, on

oath. That the defendants wholly neglected and omitted to procure insurance on the ship, according to the directions contained in said letters; and also omitted and wholly neglected to give the complainants any information respecting such omission and neglect, or in any manner respecting the said insurance, so as to enable them to apply for and procure it through some other channel; whereby they were prevented from making, or procuring to be made, any insurance on the ship, being well satisfied, from all the circumstances stated above, that it had been procured by the defendants pursuant to their said directions. That the ship was cast away, and wholly lost, during her said voyage from *Jeremie* to *Norfolk*, through stress of weather, and the danger of the seas, of which event they received the first intelligence on the 15th of April 1802. That they well hoped, and frequently requested, in a friendly manner, of the defendants, that they, having taken on themselves the insurance of the ship, by their aforesaid neglects and omissions, would forthwith, on receiving information of the loss, pay to the complainants the amount of the insurance so by them directed to be made, after deducting the usual premium at that time paid for insurance on such a voyage. But the defendants utterly refused to comply and pay to the complainants any part of the said insurance—falsely pretending that they did not receive the complainants' said letters. *Prayer* for a discovery, on oath, of matters resting in the knowledge of the defendants, &c. and that they may be decreed to pay to the complainants the sum of money so by them directed to be insured on the ship, with interest, &c. and for further relief, &c. The *answer* of the defendants admitted the receipt on the 6th of April 1802, of the letter of the 13th of March 1802, and that on the 7th of April 1802, they applied to the *Baltimore* Insurance Company to make insurance on the said ship for the voyage stated in that letter, but no insurance was effected on said voyage, because it was then known to the said office that the ship had sailed from *Kingston*, and had arrived at *Jeremie*, of all which they informed *Taylor*, one of the complainants, by letter, bearing date on the 7th of April 1802. They admit the receipt of the letter of the 6th of April 1802, but they cannot ascertain the precise period at which it was received, but suppose it to have been about the 13th of that month. That the said letter, immediately after its

1815.

Taylor & Warren
vs
Ferguson & Robertson

30.

1815.

Taylor & Warren
vs
Ferguson & Ro-
bertson

receipt, was mislaid, and was not found or remembered until about the beginning of May 1802, and not until accounts had been received of the loss of the ship. They averred that the ship was not lost on the voyage from *Jeremie* to *Norfolk*, but that she was lost at *Jeremie*, and before she had completed her lading at that port. That the ship was not wholly lost to the complainants, but that materials to the amount of $1000 were saved to the owners. That *Taylor*, one of the complainants, was indebted to the defendants in the sum of $1672 29. That after the receipt of the letter of the 6th of April 1802, the defendants admit they did not apply for insurance on the said ship, but this omission was the effect of accident, and not of any intention to injure the complainants; and the defendants insisted, that the complainants had not been injured by such omission. That the letter of the 6th of April 1802, referred to a policy supposed to be effected on the voyage described in the letter of the 13th of March 1802. No such policy had been effected; and there was nothing in the letter of the 6th of April 1802, which ordered the defendants to insure the ship at *Jeremie*. If, therefore, the defendants had caused insurance to be effected on the ship from *Jeremie* to *Cape Francois*, and thence to *Norfolk*, a loss *at Jeremie* would not have been covered by the policy. The defendants consider themselves well warranted in availing themselves of this objection, which would have protected the underwriters if a policy had been effected. That the letters of the 30th of March, and 6th of April 1802, were written by *Taylor*, one of the complainants, and the defendants did not know, neither did they believe, the said ship was the joint property of the complainants. They deny that the order was in effect an order to insure the interest of both the complainants, or that it ought to have been, or was so understood, at the time of receiving it by the defendants; but on the contrary it amounted only to an order to insure the interest of *Taylor*. That if the insurance had been effected according to the order, and a loss had accrued, which was covered or protected by the policy, nothing more than *Taylor's* interest could have been recovered.

It was admitted by an agreement between the parties, that the ship was at the time of the voyage and loss, of the value of $4000, and was lost at *Jeremie*,

as stated in the answer of the defendants, by the dangers of the sea. The account of the defendants against the complainant, *Taylor*, was admitted to be just. The materials saved from the ship, after deducting expenses, amounted to $198. The cause was submitted to the chancellor on the bill, answer, exhibits and admissions.

KILTY, Chancellor, (September term 1809.) The object of the bill is to compel the defendants to pay to the complainants the amount of insurance directed to be made, but which they had neglected to make. It is obvious that this is a matter proper for an action on the case at law. The reasons assigned for coming into this court are, that the complainants had no evidence of the delivery of their second letter of the 6th of April 1802. That the receipt thereof rested in the private knowledge of the defendants, which they always avoided acknowledging, and then denied. The prayer of the bill is, that they may set forth and discover whether they did not receive the letters as charged, and that they may be decreed to pay the sum directed to be insured, after deducting for premium of insurance. The greatest objection to the jurisdiction of this court arises from the nature of the claim, which is not founded upon any agreement, or any matter which can be made the subject of an account, but which can be supported only by establishing that there was a breach of orders, negligence or fraud, on the part of the defendants. If the jurisdiction can be sustained, it must be from the equity founded on the second letter, (on which the remedy at law depended,) being concealed or denied by the defendants, so as to entitle the complainants, not only to a discovery, but to relief by payment of the sum due, although this discovery might have been obtained here in aid of a suit at law. And it is further to be observed, that this point is not contested by the defendants, as will be seen by the agreement to submit the case. But the right of the complainants to relief, if it is to be established in this court, must depend on the decision of the questions of law, and the establishment of matters of fact, which do not appear to be properly determinable by a court of equity, but are proper for the determination of a court and jury; which may be obtained by the trial of issues sent from this court. *Decreed*, that there be tried in *Baltimore* county court

1815.

Taylor & Warren
vs
Ferguson & Robertson

the following issues, &c.   If the counsel for the complainants should be unwilling to have these issues, or any others, tried for the support of the case, and would prefer to risk the dismissal of the bill, the chancellor will proceed to decree accordingly.

The chancellor having been requested by the complainants' counsel to proceed to decide and decree upon the bill, answer and proofs, at December term 1811, he *decreed*, that the bill be dismissed with costs.   From which decree the complainants appealed to this court, where the cause was argued before BUCHANAN, NICHOLSON, EARLE, JOHNSON, and MARTIN, J.

*Harper*, for the Appellants.   There were two objections made by the defendants in the court of chancery—1. The right of recovery generally.   2. The right of *Warren*, one of the complainants, to recover, because he was not mentioned in the letter ordering the insurance.   He contended that both of the letters were to be taken together.   The last letter referred to the first, and they are to be connected.   There was no new order for insurance given, but only that new facts were to be stated—to substitute *Jeremie* and *Cape Francois*, instead of *Port Republican*.   The true meaning was, that it should be on a voyage from *Jamaica* to *Jeremie*, to *Cape Francois* and to *Norfolk*, so as to cover the vessel during the whole of the voyage from *Jamaica* to *Norfolk*, to and at all the different places where she was to stop.   *Jeremie* and *Cape Francois* were substituted as intermediate ports, instead of *Port Republican*, first mentioned.   The vessel was covered at *Jeremie*—at all events an insurance from her arrival there. He referred to *Gregory v. Christie*, 1 *Marsh.* 273. *Thompson v. Taylor*, 6 *T. R.* 478. *Horncastle vs. Stuart*, 7 *East,* 400. *Marsden vs. Reid*, 3 *East,* 572.

2. It may be said that the chancellor had no jurisdiction of the case, except to grant the *discovery*.   He contended, that the practice of the court of chancery in this state is different from that of the *English* courts.   It tends to prevent litigation, and the multiplicity of suits.   Unless it be some very peculiar case, the party need not carry it on in two courts.   It is a maxim, that a court having jurisdiction in part, has it in the whole; and the practice is, that when the court of chancery once takes a case under

its cognizance, it goes on to give the relief required. It prevents the confounding of two jurisdictions.

*Pinkney,* for the Appellees. The decree of the chancellor dismissing the bill, is perfectly correct on two grounds—1. A court of equity is incompetent to give relief in this case, the matter being exclusively at law. 2. The complainants have no case on their own showing.

1. This is a claim against agents for breach of orders, and a special action on the case in a court of law only gives the party remedy. Every question involved in the case is a question of law, and involves no one principle with which the court of chancery has cognizance. No case can be shown where chancery has interfered in a case of this nature—breach of duty—breach of orders. The jury are to assess the damages. They are first to ascertain the order for insurance—the extent and injury sustained. It cannot be said that a court of equity has original cognizance of a case like this. There are many cases where the court of chancery has concurrent jurisdiction with a court of law; but there are cases exclusively cognizable in a court of law, and such is the present case. There was no demand in the bill, except the discovery, which the court of chancery has any thing to do with. The complainants alleged that they could not prove the receipt of the letters, and called on the defendants, in chancery, to state whether they had not been received. This gave them no pretence to proceed on in their case there. All they had a right to ask was for a discovery of the fact of the receipt of the letters. The question then is, that in a case exclusively applicable to a court of law, and where a discovery is wanting, whether the party can transfer the case from a court of law to a court of equity, and ask for relief? There never was such a case in chancery. The practice is to bring the suit at law, and then apply to chancery for a discovery, to be used in the trial at law. There can be no relief in equity where there is full and adequate remedy at law. There is a single exception—for the specific performance of a contract, but the relief is different. In the one court the contract is to be specifically performed, but in the other damages are given. But here there is no pretence that the relief would be different in equity from what it would be at law. Here the claim sounds altogether in damages; and to ascertain the damages, must be by the

verdict of a jury. How could the chancellor assess the damages? He must send issues to be tried by a jury in a court of law, otherwise it would be drawing from the jury that which exclusively belongs to them, and which would be attended with dangerous consequences. There is no ground alleged for the jurisdiction of chancery, but the defect of evidence; but that may be remedied by the discovery. It is supplied on the coming in of the answer. The moment the fact is disclosed, the object is attained, and that court is *functus officio*, and the case is for a court of law. The case is so clear, that it is wholly unnecessary to refer to any authorities. This point was fully discussed in this court in *West vs. Beanes,* 3 *Harr.* & *Johns.* 568. The agents have failed to perform the complainants orders. They may have mislaid the letters. There is no fraud alleged, and it is a case strictly at law, and would be a most extraordinary subject for a court of equity. It is a case that at law relief would with reluctance be granted. How then in chancery can there be relief?

2. From the letters, the insurance could not be made— no valid policy could be effected. If it had been effected under the first letter, it would have been void—the deviation from *Port Republican* to *Jeremie* would have annulled the policy. The letter from the defendants, in answer to that first received, stated that the insurance could not be effected. The vessel was lost at *Jeremie;* and the question is, whether if the insurance had been effected under the last letter, (which was very ambiguous,) it would have covered the property at *Jeremie?* It is an equitable rule that written orders should be clear and explicit. If they are ambiguous, a court of equity cannot be called on for relief. They must not be susceptible of different constructions, so as to bind an agent and benefit the writer. It must be shown that the orders were so clear as not to be misunderstood, so that the agent would be in fault by not giving them a true construction. The first order was for insurance *from Jamaica*—not *at Jamaica.* The second order directs no insurance *at* and *from Jeremie* There are no precise directions except in the first letter, which says it must be on the vessel from *Jamaica* to *Port Republican,* and from thence to *Norfolk*—not *at* and *from.* The second order places the insurance, with reference to *Jeremie,* as the first order did when the vessel was at *Jamaica,*

which was to insure *from* that place. The conclusion is, that the agents were to insure *from Jeremie* in the manner they were directed to insure *from Jamaica*. The policy, if it had been made under the first order, could not be changed by substituting *Jeremie* for *Jamaica*, and *Cape Fráncois* for *Port Republican*. The policy would have been void. There must have been a new policy. When the first order was received, a part of the voyage had been performed—from *Jamaica* to *Jeremie*. Would it have been justifiable in the agents to make their principal pay a premium on a performed voyage? They might well construe the order to be, that all that part of the voyage which was performed was out of the case. This was such a construction which they might give without making them liable under such an order. If they were mistaken, it was such a mistake as an honest man might well fall into. They were as much bound to save premium as they were to insure. Who is to suffer by an ambiguity? Surely he who uses it. The agents were not bound to comply with the orders, because of their ambiguity. *Moore vs. Morgue, Cowp.* 479. The second order does not prescribe how the insurance was to be effected. Facts were to be substituted; and suppose they had been substituted, what effect would they have? It is not a clear case that the first order was to insure the vessel *at Jeremie*. The cases cited were cases for freight, and they do not go clearly to decide that if the insurance was from one place to another, and then to another, without saying *at*, and the loss was at one of the places, that the insured could recover. To recover against the defendants it must be shown, that if the insurance had been effected, the complainants could have recovered against the underwriters.

The opinion of the court was delivered by

BUCHANAN, J. It is the opinion of the court, that the relief prayed for in the bill of complaint in this case, is a matter not properly cognizable in a court of chancery, and that that court had no jurisdiction further than to compel the discovery which forms one of the objects of the bill; which being obtained, the complainants ought to be left to their remedy at law. And therefore, without inquiring into the correct interpretation of the letters, which are alleged to have been written to the defendants by one of the

1815.

Taylor & Warren
vs
Ferguson & Robertson

1815.

Chase
vs
Taylor.

complainants, or expressing any opinion as to their legal effect and operation, in which there would be no propriety, that being a subject proper for the consideration of another tribunal, the decree of the chancellor is affirmed.

DECREE AFFIRMED.

---

DECEMBER.

## CHASE VS. TAYLOR.

W T drew a foreign bill of exchange dated the 27th of April 1807, on W L, in favour of T C, payable at 60 days after sight; which bill was on the 6th of June 1807 presented for acceptance and refused, and so noted by a notary public, but no protest was ever made for non acceptance. W L at that time and afterwards, and on the 8th of August 1807, when the bill became due, had funds in his hands belonging to W T more

APPEAL from *Baltimore* County Court. This was an action of *assumpsit* for money had and received. The general issue was pleaded.

1. At the trial the plaintiff, (now appellee) read in evidence a bill of exchange drawn by him according to the custom of merchants, on the 27th of April 1807, in favour of the defendant, upon one *William Lees,* merchant at *Liverpool,* in *England,* for £1000 sterling, payable sixty days after sight. And further offered evidence to prove, that the said bill of exchange having been received by the defendant, was by him transmitted to one *Thomas Slater,* his

than sufficient to pay the bill, and he was in good credit up to the 8th of August 1807, when he became a bankrupt. The bill was presented for payment, and no demand of payment from W L, and no protest for non payment were made until the 17th of November 1807. No notice was given to W T of the non-acceptance, and the non payment was not made known to him until some time in 1808. On the 17th of August 1807, W T, being much embarrassed in his commercial concerns, but having very considerable property in ships, &c executed certain bills of sale in trust, &c. and on the 11th of September 1807, he executed one on the ship O, to T C, in trust, &c. On the 20th of September 1808 he satisfied the first mentioned bills of sale, and received a reconveyance. T C about that time pressed W T to settle an account, he claiming a large balance to be due to him, in which the bill of exchange was an article of charge, together with interest, damages and costs thereon On the 27th of September 1808, the said account was settled, and W T paid to T C in cash, and notes, which were afterwards paid, the balance due on the said account. T C had declared to W T before the said settlement and payments, that he would not release his right under the deed of the 11th of September 1807, unless W T would settle the said account, and pay or secure the balance. In an action by W T against T C for money had and received—*Held,* that if W T, at the time of making the settlement of the 27th of September 1808, was ignorant of the fact that the bill of exchange had not been protested for nonacceptance, then the whole settlement was formed in mistake, and was not obligatory on W T. or if W T was then apprized of the said fact, but made the settlement, and gave the notes, in order to induce T C to relinquish his said lien on the ship O, which T C otherwise refused to do, then the settlement, payment and notes were not voluntary, and did not bind W T That if the settlement was made by W T under an ignorance of the fact of nonprotest of the bill, or for the purpose of inducing T C to relinquish his said lien, which otherwise he refused to do, and that in the settlement the cash payment then made was intended by the parties to apply to the said bill, then W T was entitled to recover back so much of the said money as was paid on account of the said bill, except that proportion of the bill which was received by him of W L's estate. And if in the settlement, the notes given were intended by the parties to apply to the said bill, and that before the time of paying the notes, W T was still ignorant of the fact that the bill had not been protested for acceptance, then the payment of the notes was by mistake, and did not bind W L. And if the notes were intended by the parties to apply to the said bill, and at the time of taking them up W T was apprised of the fact that the bill had not been protested for non acceptance, but that he so took them up for the sole purpose of inducing T C to relinquish his lien on the ship, then the payment of the notes was not voluntary, and did not bind W T.

If W T, after he was informed of the irregularity in the protest of the bill of exchange for non payment, and of the non protest for non acceptance, and had taken up the bill, made a claim against the estate of W L therefor, and it was allowed by the commissioners of W L's estate, and a dividend allowed, and received by W T, it will not prevent W T from recovering from T C the balance paid by him on account of the bill, deducting such dividend.

No evidence can be given of the protest of a foreign bill of exchange for non acceptance, without producing the pretest itself, or a copy from the books of the notary, or proving that the books and the original protest are lost.